**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 3:26CR-266 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | **NOTICE OF REQUEST** |
| | ) | **FOR DISCOVERY** |
| KEVIL S. NAIK, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the Defendant requests discovery and inspection with the right to copy or photograph, where appropriate, the following materials:

1. Pursuant to Rule 16(a)(1)(A), the substance of all oral statements made by Defendant.
2. Pursuant to Rule 16(a)(1)(B), all written or recorded statements of Defendant.
3. Pursuant to Rule 16(a)(1)(D), a copy of the Defendant's prior criminal record.
4. Pursuant to Rule 16(a)(1)(E), all documents, photographs, and other tangible objects, or copies of portions thereof that (i) is material to preparing the defense; (ii) the Government intends to use in its case in chief at trial;(iii) the item was obtained from or belongs to defendant. This request encompasses the following non-exclusive list of evidentiary items:

a. **Any and all dash camera and body camera footage from ALL responding law enforcement officers.**

b. **Any and all signed *Miranda* forms or consent to search forms**

c. **Any and all police reports from ALL responding law enforcement officers.**

d. **Any and all Cellebrite extractions or other digital forensic extractions or examinations performed.**

5. Pursuant to Rule 16(a)(1)(F), all reports of physical and mental examination and of any scientific test or experiment.

6. Pursuant to Rule 16(a)(1)(G), the name(s) of any expert witness and the requisite summary of testimony the Government intends to utilize as evidence in chief at trial.

7. All evidence favorable to the Defendant on the issues of guilt or punishment.

In addition to the above request, Defendant respectfully requests the following additional items:

A. Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), I hereby request that I be provided with any exculpatory material which exists in this case relating to guilt and/or punishment. Should there be a question with regard to whether certain information constitutes Brady material, the information should be presented to the Court for view in camera to determine whether it should be produced.

B. Pursuant to F.R.C.P. 26.2, I would request pretrial production of Jencks material. If pretrial Jencks is produced by the government, the defendant is willing to reciprocate in kind.

C. Please provide me with notice of any evidence which you intend to introduce pursuant to Federal Rule of Evidence 404(b).

D. Pursuant to Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure, I hereby request notice of which evidence the government intends to use in its case-in-chief.

8. The defense requests the following information and materials concerning any use of artificial intelligence, machine-learning, algorithmic, automated, or computer-assisted tools ("AI tools") in the investigation, analysis, charging, prosecution, or anticipated proof in this case. This information is material to the preparation of the defense, to the evaluation and challenge of any expert or technical evidence, and to the reliability and admissibility of any evidence the government may seek to offer:

A. Identification of AI Tools and Uses: Please identify any AI tool used by any member of the prosecution team, including federal, state, or local law-enforcement officers; forensic laboratories; analysts; contractors; or other agents, in connection with this case. For each such tool, please state:

   i. The name and version of the tool;

   ii. The vendor, developer, or maintaining agency;

   iii. The agency or office that used the tool; and

   iv. A description of the purpose(s) for which it was used (for example, facial recognition, predictive policing or "heat lists," risk assessment, automated report or narrative generation, transcription, translation, digital-media analysis, data-link analysis, pattern or anomaly detection, or other specified use).

B. Data Inputs, Operations, and Outputs: For each identified AI tool, please produce:

i. A description of the data or inputs supplied in this case (for example, images, video, audio, text, location data, records, or database extracts), including the source(s) of those inputs;

ii. Any prompts, queries, parameters, filters, thresholds, or settings used that materially influenced the tool's operation or output in this case; and

iii. All reports, outputs, alerts, scores, rankings, transcripts, translations, summaries, narratives, or other materials generated by the tool that relate in any way to the defendant, the charged offenses, alleged co-participants, or locations/devices at issue.

C. Relationship Between AI-Generated Materials and Evidence to Be Offered: Please identify:

i. Any witness statement, summary, or report in this case that was drafted, in whole or in part, by or with the assistance of an AI tool (including AI-generated or AI-assisted police reports, investigative summaries, laboratory reports, or internal memoranda);

ii. Any trial exhibit, demonstrative, chart, or summary that incorporates or is based on AI-generated analysis or output; and

iii. Any charging decision, plea offer, sentencing recommendation, or guideline calculation that relied, in whole or in part, on AI-generated risk assessments, predictive analytics, or similar tools.

D. Validation, Reliability, Error, and Bias: For each AI tool identified above that was used in connection with this case or whose outputs the government may rely upon directly or indirectly, please produce:

   i. Any validation studies, testing reports, or audits addressing the tool's accuracy, reliability, error rates, and limitations (including false-positive and false-negative rates), whether internal, external, or vendor-generated;

   ii. Any internal or external reports, memoranda, complaints, or correspondence concerning known problems, failures, limitations, or inaccuracies of the tool, including misidentifications, mis-transcriptions, or erroneous classifications; and

   iii. Any materials addressing potential or identified bias (including racial, ethnic, gender, or geographic bias) in the tool's design, training data, operation, or outputs, and any steps taken to detect, measure, or mitigate such bias. These materials are necessary to assess reliability and are directly relevant to any Rule 702/703 analysis, Daubert/Kumho Tire motion practice, and impeachment of any witness who relied on or presents AI-dependent evidence.

E. Policies, Procedures, and Training: Please provide:

   i. Any written policies, protocols, standard operating procedures, manuals, or guidelines that govern the use of the identified AI tools by any agency involved in this case;

   ii. Any training materials, presentations, or similar instructional materials provided to agents, analysts, or laboratory personnel regarding the use, interpretation, documentation, or limitations of the identified AI tools; and

   iii. Any guidance or instructions given to personnel in this case regarding how to describe or reference AI-assisted work in reports, affidavits, or testimony.

F. Vendor and Contractual Information: To the extent within the possession, custody, or control of the prosecution team, please produce:

   i. Any contracts, statements of work, memoranda of understanding, or similar agreements between any involved agency and the vendor or developer of an AI tool used in this case that address data access, model training on government data, confidentiality, or limits on disclosure; and

   ii. Any non-disclosure agreements or similar restrictions that bear on the ability of the government, its agents, or vendors to disclose information about the operation, validation, or limitations of the AI tool. To the extent any such agreement is asserted to restrict disclosure, please identify it and specify the

nature of the claimed restriction so that the defense may address any alleged barrier to disclosure with the Court.

G. Exculpatory, Impeaching, or Mitigating Information: Please disclose:

   i. Any information indicating that an AI tool used in this case produced incorrect, inconsistent, or exculpatory results, including instances where the tool initially implicated the wrong person, mis-transcribed or mis-translated material, or otherwise yielded outcomes that undermine confidence in the government's evidence; and

   ii. Any information that tends to impeach the credibility or reliability of AI-dependent evidence or the witnesses who rely upon such tools, including evidence of known limitations or reliability concerns not otherwise disclosed. This request is made pursuant to Brady and Giglio and their progeny and encompasses both case-specific and system-wide information that is favorable to the accused.

H. Notice of Future Use: The defense further requests that the government promptly provide written notice if it intends, at any later point, to use an AI tool in connection with this case in any way not previously disclosed, including for additional investigative steps, new analyses, or preparation of trial exhibits or summaries. The defense requests that the government produce the corresponding materials requested above sufficiently in advance of any hearing, trial, or other proceeding at which such

materials may be relevant so that the defense may evaluate, investigate, and, if appropriate, challenge their admissibility and reliability.

At a minimum, the defense requests that the government's responses to this section comply with the disclosure obligations imposed by Rule 16, Brady and Giglio, Rules 702 and 703, Daubert and Kumho Tire, and any applicable Northern District of Ohio Local Rules or judge-specific orders governing discovery, expert disclosure, or the use of artificial intelligence in filings or evidence.

Respectfully submitted,

Stephen Newman
Federal Public Defender
Ohio Bar: 0051928

*s/ Donna M. Grill*
DONNA M. GRILL (#0062141)
Office of the Federal Public Defender
617 Adams Street, 2nd Floor
Toledo, Ohio 43604
(419) 259-7370 (O) 419-259-7375 (F)
E-mail: donna_grill@fd.org